# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

MATTHEW D.[1],

        Plaintiff,

   v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

Case No. 6:20-cv-1716-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Mark Manning, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette St., Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jacob Phillips, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Matthew D. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under Title II of the Social Security Act (Act). For the following

reasons, the Court reverses the Commissioner's decision and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more

than a mere scintilla but less than a preponderance . . . ." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for DIB on February 2, 2018, alleging a disability onset date

of February 28, 2015. AR 146, 149. Plaintiff's date of birth is August 26, 1977. AR 146. He

was 37 years old as of the alleged disability onset date. Plaintiff's claim for DIB was first denied

on August 1, 2018, and again upon reconsideration on April 8, 2019. AR 55, 67. Plaintiff

submitted a request for a hearing in front of an Administrative Law Judge (ALJ) on June 7, 2019.

AR 94. On February 6, 2020, Plaintiff testified before ALJ MaryKay Rauenzahn. AR 29.

Vocational Expert (VE) Robert Simmons also testified at the hearing. *Id.* The ALJ issued a

decision on February 28, 2020, finding Plaintiff not disabled and therefore not entitled to DIB.

AR 10-23. Plaintiff requested a review of the decision by the Appeals Council, which denied the

request on August 13, 2020. AR 1. The Appeals Council's denial made the ALJ's decision the

final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" *Id.*
§ 404.1520(a)(4)(i). This activity is work involving significant mental or
physical duties done or intended to be done for pay or profit. *Id.*
§ 404.1510. If the claimant is performing such work, she is not disabled
within the meaning of the Act. *Id.* § 404.1520(a)(4)(i). If the claimant is
not performing substantial gainful activity, the analysis proceeds to step
two.

    2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? *Id.* § 404.1520(a)(4)(ii). An impairment or combination of

impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1522(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. *Id.* § 404.1509. If the claimant does not have a severe impairment, the analysis ends. *Id.* § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in *id.* Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. *Id.* § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. *Id.* §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.* § 404.1520(a)(4)(v).

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001);

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work

experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

As a preliminary step in Plaintiff's claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019. AR 15. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of February 28, 2015. *Id.* At step two, the ALJ identified Plaintiff's severe impairments as familial dilated cardiomyopathy, chronic systolic heart failure after receiving an implantable cardioverter-defibrillator, and obstructive sleep apnea. *Id.* The ALJ determined that Plaintiff's other medically determinable impairments—erectile dysfunction, thyroiditis, depression, anxiety, acute appendicitis, attention-deficit hyperactivity disorder, nocturnal shortness of breath, orthopnea, and dyspnea—did not meet the definition of a severe impairment under Social Security Administration regulations. AR 15-17. At step three, the ALJ found that none of Plaintiff's severe impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

Before proceeding to step four, the ALJ determined Plaintiff's RFC through the date last insured, as follows:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), in that the claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently and can stand and/or walk for approximately 2 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant should have only occasional

exposure to atmospheric conditions and no exposure to vibrations, moving mechanical parts and high, unprotected place hazards, as rated by the Dictionary of Occupational Titles (DOT). The claimant should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties and no work on a moving conveyor belt.

AR 18 (footnote omitted).

At step four, the ALJ found that Plaintiff could not perform any past relevant work through the date last insured. AR 21. At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. AR 22. Based on the testimony of the VE, the ALJ found that Plaintiff could work as a charge account clerk, diet clerk, ticket counter, or addressing clerk. AR 22-23. Thus, the ALJ held that Plaintiff was not disabled at any time from the alleged onset date to the date last insured. AR 23.

## DISCUSSION

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony and rejecting the medical opinion of Lea Dye-Blondell, PA. The Court considers both in turn.

## A. Plaintiff's Subjective Symptom Testimony

### 1. Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained

*which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

### 2. Plaintiff's Testimony

In his May 25, 2017, function report and his February 6, 2020, hearing, Plaintiff reported physical limitations due to fatigue, dizziness, and difficulty concentrating. AR 37, 40, 171. Plaintiff testified that he generally was only able to maintain a given activity for a short time before suffering from severe fatigue. AR 37, 39, 174 As a result, he could no longer participate much in his hobbies, most household chores, or in the lives of his children. AR 39, 40, 172.

Plaintiff testified he experienced "bad days" of "extreme exhaustion" two to four days a week. AR 172. Plaintiff characterized a "bad day" as when he would spend 22 to 23 hours in bed. *Id.* Plaintiff consistently reported to his medical providers that he suffered from chronic fatigue. AR 351, 478, 529, 748, 776, 787, 797.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 19. The ALJ then rejected Plaintiff's testimony on the intensity, persistence, and limiting effects of his symptoms because it was inconsistent with his activities of daily living and unsupported by the objective medical evidence. *Id.* The Court now considers the ALJ's rationales.

### a.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also*

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

At the beginning of her discussion of Plaintiff's testimony, the ALJ summarized Plaintiff's description of his limitations as: "He claimed that his symptoms interfered with his ability to engage in activities that required lifting, standing, climbing stairs, concentrating, and completing tasks" and "he struggled to perform some household chores including vacuuming, but admitted that he was able to attend his children's activities." AR 19. The ALJ later concluded that Plaintiff's activities of daily living (ADLs) were inconsistent with his alleged limitations and instead supported his ability to perform sedentary work as outlined in the RFC. AR 20-21. The ALJs discussion of Plaintiff's ADLs lasted only three sentences.

> The claimant indicated that he could perform adequate self-care, prepare simple meals, help care for his kids, go for walks, drive a car, use a computer, handle his finances, engage in hobbies, do household chores, and go out to the store. The record also indicated that the claimant was able to mow the lawn, occasionally carry heavy objects, walk up an incline, and walk for 1-1.5 miles at a time with minimal fatigue. These activities indicate a higher level of function than that alleged by the claimant . . . .

AR 20-21 (citations omitted).

The ALJ's conclusion fails for three reasons. First, the Court does not agree with the ALJ's characterization of Plaintiff's ADLs. Plaintiff consistently qualified his "ability" to

perform the listed ADLs with his fatigue. Plaintiff testified he has a hard time using the internet because he would become fatigued and dizzy. AR 40. He tried to do his taxes but had to stop because he became overwhelmed. *Id*. Plaintiff gave up most of his hobbies—biking, hiking, household projects—and as of May 25, 2017, when he completed his function report, he stated that he was limited to talking and visiting with family or friends, checking the news, and attending some of his children's activities. AR 175. Plaintiff also stated he could only perform these "hobbies" about one to three times a month. *Id*. The ALJ cited the medical record to support the proposition that Plaintiff could mow the lawn, carry heavy objects, and walk up an incline. The record, however, notes that Plaintiff reported "increased fatigue and sometimes exhaustion" after performing those tasks. AR 271. In addition, Plaintiff testified at his hearing that he had to give the lawn mowing duties exclusively to his children. AR 39. Plaintiff reported an ability to perform some household chores but stated he could usually only perform a few in a day and only in 10- to 20-minute increments before needing to rest due to fatigue. AR 174.

Second, the ALJ did not specifically cite any testimony of Plaintiff that she found discredited by any specific ADL. The ALJ broadly listed some alleged limitations in one section of her opinion and then later broadly stated that Plaintiff's ADLs were inconsistent with his limitations, without identifying any specific limitation or inconsistency. The ALJ did not "state specifically which symptom testimony is not credible" and which ADLs discredited that testimony. *Smolen*, 80 F.3d at 1284. The ALJ identified specific *ADLs* but did not identify any specific *limitation* that was inconsistent with any ADL, or any specific *testimony* that was discredited by any particular ADL. That is insufficiently specific to discredit Plaintiff's testimony. *See Brown-Hunter*, 806 F.3d at 494.

Third, even if the Court presumes that the ALJ intended that the limitations summarized earlier in her opinion are the limitations that the ALJ found inconsistent with Plaintiff's ADLs, the ALJ's reasoning is not clear and convincing. Plaintiff's claimed limitations as summarized by the ALJ (inability to lift, stand, climb stairs, concentrate, complete tasks, struggle to perform household chores like vacuuming but ability to attend children's school events) are not inconsistent with Plaintiff's activities. The fact that Plaintiff can perform basic hygiene, make simple meals, do simple chores, attend his children's school events when possible, and take walks with rest breaks are all consistent with his testimony regarding his limitations and represent the minimal life activities that the Ninth Circuit repeatedly has admonished ALJ's not to penalize claimants for attempting. *See Molina*, 674 F.3d at 1112-13; *Vertigan*, 260 F.3d at 1050; *Reddick*, 157 F.3d at 722. Thus, Plaintiff's level of activity was not "inconsistent with [Plaintiff's] claimed limitations" and therefore is not a clear and convincing reason to discount Plaintiff's symptom testimony. *Reddick*, 157 F.3d at 722.

### b. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Because the Court has concluded the ALJ erred by rejecting Plaintiff's symptom testimony for the preceding reason, the lack of objective medical evidence is the only remaining

reason for doing so. That reason alone cannot support discrediting Plaintiff's symptom testimony. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(2). Thus, the ALJ erred in rejecting Plaintiff's subjective symptom testimony.

## B. Medical Opinion of Lea Dye-Blondell, PA

Plaintiff filed his application for benefits on February 2, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however,

required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations . . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Dye-Blondell offered her medical opinion of Plaintiff on January 6, 2020, in a standard form "Treating Source Statement" (Treating Statement). AR 814-18. Dye-Blondell opined Plaintiff "would need extended rest" beyond a typical 10- to 15- minute break after two hours of repetitive activity and would need to take unscheduled breaks during a normal eight-hour workday. AR 815; AR 817. Plaintiff could sit for 30 minutes at a time and for two hours in a day and could stand and walk, in combination, for 30 minutes at a time and for two hours in a day. AR 816. Dye-Blondell noted that Plaintiff's medical impairments would prevent him from maintaining a normal work schedule[3] three to four days a month. AR 817.

---

[3] The Statement defined a normal work schedule as "an 8-hour day, 5 days per week with normal breaks that would usually consist of a morning and an afternoon break of approximately 10-15 minutes in duration and a lunch break of one-half hour to one hour." AR 817.

The ALJ found Dye-Blondell's opinion unpersuasive. The ALJ stated Dye-Blondell's opinion was not supportable because "the medical evidence of record as a whole supports significant improvement in the claimant's heart functioning . . . ." AR 21. The ALJ did not explain why Plaintiff's improved heart functioning undermined Dye-Blondell's opinion. The Court does not find substantial support for the ALJ's position. Some of Plaintiff's health measures—his ejection fraction and his left and right ventricle function—did show improvement from 2017 to 2019, but only from the critically low point measured after Plaintiff's September 2017 heart failure. *Compare* AR 368 (severely reduced left ventricle systolic function and moderate to severely reduced right ventricle systolic function in September 2017), *with* AR 739 (finding "left ventricular systolic function is low normal" and "right ventricular systolic function has improved" in October 2019). His ejection function improved, but only to a low-average level and only after two years of minimal sedentary activity. AR 238, 484. Despite those improvements, Plaintiff's June 2019 pulmonary stress test showed he still tested below the lowest levels of an average comparable adult. AR 564. In November 2019, the most recent medical records available, Plaintiff reported being able to walk only a quarter-mile with no incline before experiencing shortness of breath and was suspected to have muscular dystrophy. AR 797. The medical record does not contain between a scintilla and a preponderance of evidence in support of the ALJ's position that Plaintiff's improvement undermines Dye-Blondell's opinion that Plaintiff is significantly limited. *Bray*, 554 F.3d at 1222. Instead, the record confirms that Plaintiff experiences significant limitations due to his chronic heart failure and associated fatigue.

The ALJ also found Dye-Blondell's opinion unpersuasive because "there is no reason given in the opinion for the need to elevate [Plaintiff's] legs (claimant testified that any swelling

was in the chest/stomach), or to change positions, nor is there a reason given for the need of additional breaks, or the need to regularly miss 3-4 day[s] of work." AR 21. The ALJ's reasoning is not supported by substantial evidence because the form Treating Statement completed by Dye-Blondell did not ask for any such rationales. Question 10(d) asked: "Does your patient need a job which permits shifting positions at will from siting, standing or walking?" AR 816. Dye-Blondell checked the box for "yes." Question 10(e) asked: "Will your patient need to take any unscheduled breaks during an 8-hour workday?" AR 817. Dye-Blondell checked the box for "yes." Question 11 asked: "How often would [Plaintiff's] medical problems prevent him from being able to maintain a regular work schedule?" *Id.* Dye-Blondell checked the line for "3 or 4 days per month." *Id.* The Treating Statement did not ask for an explanation for any of those answers, unlike with other questions. Thus, it was not reasonable for the ALJ to expect Dye-Blondell to list an explanation where none was solicited nor space provided for one.

The ALJ did not provide "an explanation supported by substantial evidence" for rejecting Dye-Blondell's opinion about Plaintiff's limitations—his need for additional, unexpected breaks, his sit, stand, and walk limitations, and his inability to consistently maintain a normal work schedule. *Woods*, 32 F.4th at 792. The ALJ erred in finding Dye-Blondell's opinion unpersuasive because neither of the ALJs reasons for dismissing the opinion were supported by substantial evidence.

## C.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of

further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Although the ALJ committed legal err in discounting Plaintiff's subjective symptom testimony and discounting Dye-Blondell's opinion, the record is not free from conflicts or ambiguities. Plaintiff's last spoke to the nature and frequency of his "bad days"—22 to 23 hours a day in bed, two to four days a week—in his 2017 function report. In December 2018, Plaintiff's wife reported to Dye-Blondell that Plaintiff spends two to three days at a time in bed and had once been bedridden with fatigue for six days but made no comment on how often Plaintiff experienced those symptoms. AR 478. Plaintiff did not testify to an updated description of the nature or frequency of his "bad days" at his hearing. In light of the modest improvements

in Plaintiff's health after 2017, the Court cannot conclude Plaintiff's earlier testimony about his "bad days" is unambiguous or remains in effect through the date last insured.

Additionally, Dye-Blondell's various opinions outlining Plaintiff's limitations are ambiguous and internally inconsistent. Dye-Blondell opined that Plaintiff could only sit for two hours in a day, but the remainder of the opinion and the record as a whole are silent about why Plaintiff would have any limitation in sitting. Furthermore, Dye-Blondell's opinions about Plaintiff's need for extended breaks was internally inconsistent. Dye-Blondell opined that after two hours of repetitive work Plaintiff would have to take *prolonged* breaks to lie down and rest. When asked how often Plaintiff would be unable to maintain a standard workday with normal breaks, Dye-Blondell stated only three to four days a month. But if Plaintiff would need to take extended periods of rest "beyond usual 10-15 [minute] breaks" after working for two hours, he could never work a standard workday with normal breaks.

The ALJ committed reversible error in rejecting Plaintiffs subjective symptom testimony and in finding the medical opinion of Dye-Blondell unpersuasive. The Court does not, however, find the record free of conflicts or ambiguities. Thus, the appropriate disposition is a remand for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 18th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge